IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WILLIAM J. RICHARDS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION No. 3:2008-284 |
| | ) | |
| MICHAEL J. ASTRUE, | ) | JUDGE KIM R. GIBSON |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER OF COURT

**GIBSON, J.**

### I. SYNOPSIS

This matter comes before the Court on the parties' cross-motions for summary judgment, which have been filed pursuant to Federal Rule of Civil Procedure 56. (Doc. Nos. 21 & 23.) The Court has jurisdiction in this case pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). For the reasons that follow, the Plaintiff's motion for summary judgment (Doc. No. 21) will be denied, the Defendant's motion for summary judgment (Doc. No. 23) will be granted, and the administrative decision of the Commissioner of Social Security ("Commissioner") will be affirmed.

### II. PROCEDURAL HISTORY

Plaintiff William J. Richards ("Richards") protectively applied for disability insurance benefits ("DIB") and supplemental security income ("SSI") benefits under Titles II and XVI of the Social Security Act ("Act") [42 U.S.C. §§ 401-433, 1381-1383f] on March 20, 2006, alleging

disability as of July 17, 2003. (R. at 57-58, 528.) The applications were administratively denied on September 5, 2006. (R. at 39, 533.) Richards responded on October 13, 2006, by filing a timely request for an administrative hearing. (R. at 46.) On August 21, 2007, a hearing was held in Johnstown, Pennsylvania, before Administrative Law Judge Douglas W. Abruzzo (the "ALJ"). (R. at 541.) Richards, who was represented by counsel, appeared and testified at the hearing. (R. at 549-574.) Testimony was also taken from Marilyn Richards-Rhodes ("Richards-Rhodes"), Richards' former wife, and Judy Schollaert ("Schollaert"), an impartial vocational expert. (R. at 574-585.) In a decision dated October 10, 2007, the ALJ determined that Richards was not "disabled" within the meaning of the Act. (R. at 11-29.) The Appeals Council denied Richards' request for review on November 10, 2008, thereby making the ALJ's decision the final decision of the Commissioner in this case. (R. at 6.) Richards commenced this action on December 15, 2008, seeking judicial review of the Commissioner's decision. (Doc. Nos. 1 & 3.) Richards and the Commissioner filed motions for summary judgment on October 6, 2009, and October 19, 2009, respectively. (Doc. Nos. 21 & 23.) These motions are the subject of this memorandum opinion.

### III. STANDARD OF REVIEW

This Court's review is limited to determining whether the Commissioner's decision is "supported by substantial evidence." 42 U.S.C. § 405(g); *Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir. 1994). The Court may not undertake a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. *Monsour Med. Ctr. v. Heckler*, 806 F.2d 1185, 1190-1191 (3d Cir. 1986). Congress has clearly expressed its intention that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C.

§ 405(g). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565, 108 S. Ct. 2541, 101 L. Ed. 2d 490 (1988) (internal quotation marks omitted). As long as the Commissioner's decision is supported by substantial evidence, it cannot be set aside even if this Court "would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). "Overall, the substantial evidence standard is a deferential standard of review." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004).

In order to establish a disability under the Act, a claimant must demonstrate a "medically determinable basis for an impairment that prevents him [or her] from engaging in any 'substantial gainful activity' for a statutory twelve-month period." *Stunkard v. Sec'y of Health & Human Servs.*, 841 F.2d 57, 59 (3d Cir. 1988) (citing *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987)); 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is considered to be unable to engage in substantial gainful activity "only if his [or her] physical or mental impairment or impairments are of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To support his or her ultimate findings, an administrative law judge must do more than simply state factual conclusions. He or she must make specific findings of fact. *Stewart v. Sec'y of Health, Educ. & Welfare*, 714 F.2d 287, 290 (3d Cir. 1983). The administrative law judge must consider all medical evidence contained in the record and provide adequate explanations for disregarding or rejecting evidence. *Weir ex rel. Weir v. Heckler*, 734 F.2d 955, 961 (3d Cir. 1984);

3

*Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981).

The Social Security Administration ("SSA"), acting pursuant to its legislatively delegated rulemaking authority, has promulgated a five-step sequential evaluation process for the purpose of determining whether a claimant is "disabled" within the meaning of the Act. The United States Supreme Court recently summarized this process as follows:

> If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further. At the first step, the agency will find non-disability unless the claimant shows that he is not working at a "substantial gainful activity." [20 C.F.R.] §§ 404.1520(b), 416.920(b). At step two, the SSA will find non-disability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." §§ 404.1520(c), 416.920(c). At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. §§ 404.1520(d), 416.920(d). If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. §§ 404.1520(f), 404.1560(c), 416.920(f), 416.960(c).

*Barnhart v. Thomas*, 540 U.S. 20, 24-25, 124 S. Ct. 376, 157 L. Ed. 2d 333 (2003) (footnotes omitted).

In an action in which review of an administrative determination is sought, the agency's decision cannot be affirmed on a ground other than that actually relied upon by the agency in making

4

its decision. The Supreme Court has explained:

> When the case was first here, we emphasized a simple but fundamental rule of administrative law. That rule is to the effect that a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis. To do so would propel the court into the domain which Congress has set aside exclusively for the administrative agency.

*SEC v. Chenery Corp.*, 332 U.S. 194, 196, 67 S. Ct. 1575, 91 L. Ed. 1995 (1947). The United States Court of Appeals for the Third Circuit has recognized the applicability of this rule in the Social Security disability context. *Fargnoli v. Halter*, 247 F.3d 34, 44, n.7 (3d Cir. 2001). Thus, the Court's review is limited to the bases of the ALJ's decision.

## IV. DISCUSSION

In his decision, the ALJ determined that Richards had not engaged in substantial gainful activity subsequent to his alleged onset date. (R. at 16.) Richards was found to be suffering from degenerative disc disease of the lumbar spine (with the residual effects of lumbar surgery), post-laminectomy syndrome, reading problems, hypothyroidism, and depression. (R. at 16-19.) His degenerative disc disease, post-laminectomy syndrome and reading problems were found to be "severe" within the meaning of 20 C.F.R. §§ 404.1520(a)(4)(ii) and 416.920(a)(4)(ii), while his hypothyroidism and depression were deemed to be "non-severe." (*Id.*) The ALJ concluded that Richards' impairments did not meet or medically equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listing of Impairments" or, with respect to a single impairment, a

"Listed Impairment" or "Listing"). (R. at 19.)

In accordance with 20 C.F.R. §§ 404.1545 and 416.945, the ALJ assessed Richards' residual functional capacity as follows:

> Upon careful consideration of the entire record, the undersigned finds the claimant has the residual functional capacity to perform work at the light exertional level that affords a sit/stand option and permits the claimant to take four or five steps away from his workstation during a one-minute period up to five times an hour if working at the sedentary exertional level, is limited to occasional crouching and crawling and must avoid climbing on ladders, ropes and scaffolds, is limited to occasional pushing and pulling with the lower extremities to include the operation of pedals unless the pedal requires less than five pounds of force, must avoid prolonged exposure to cold temperature extremes along with extreme wetness or humidity, is limited to occupations which do not require exposure to unprotected heights, and is limited to simple, routine tasks involving only simple, work-related decisions.

(R. at 19-20.) Richards had past relevant work experience as a salvage cutter, mason helper and material handler. (R. at 580-581.) Schollaert testified that these jobs were classified at the "heavy"[1] and "very heavy"[2] levels of exertion. (*Id.*) It was determined that Richards could not return to his past relevant work, since he was deemed to be incapable of performing work above the "light"[3] level

---

[1] "Heavy work involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. If someone can do heavy work, [the SSA] determine[s] that he or she can also do medium, light, and sedentary work." 20 C.F.R. §§ 404.1567(d), 416.967(d).

[2] "Very heavy work involves lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more. If someone can do very heavy work, [the SSA] determine[s] that he or she can also do heavy, medium, light and sedentary work." 20 C.F.R. §§ 404.1567(e), 416.967(e).

[3] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [a claimant] must have the ability to do substantially all of these activities. If someone can do light work, [the SSA] determine[s] that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long

6

of exertion. (R. at 26.)

Richards was born on September 1, 1970, making him thirty-two years old as of his alleged onset date and thirty-seven years old as of the date of the ALJ's decision. (R. at 26, 549.) He was classified as a "younger person" under the Commissioner's regulations. 20 C.F.R. §§ 404.1563(c), 416.963(c). He had a "limited education"[4] and an ability to communicate in English. (R. at 26.) Given the applicable residual functional capacity and vocational assessments, the ALJ concluded that Richards could work as a marker, fast food worker, semiconductor bonder, or surveillance systems monitor. (R. at 28.) The marker and fast food worker positions were classified as "light" jobs, while the semiconductor bonder and surveillance systems monitor positions were classified as "sedentary"[5] jobs. (R. at 28, 582-583.) Schollaert's testimony established that these jobs existed in the national economy for purposes of 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B). (R. at 582-583.)

Richards raises several arguments in support of his motion for summary judgment.[6] (Doc. No. 22 at 4-17.) His first argument concerns the ALJ's finding at the third step of the sequential

---

periods of time." 20 C.F.R. §§ 404.1567(b), 416.967(b).

[4] "Limited education means ability in reasoning, arithmetic, and language skills, but not enough to allow a person with these educational qualifications to do most of the more complex job duties needed in semi-skilled or skilled jobs. [The SSA] generally consider[s] that a 7th grade through the 11th grade level of formal education is a limited education." 20 C.F.R. §§ 404.1564(b)(3), 416.964(b)(3).

[5] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. §§ 404.1567(a), 416.967(a).

[6] Although Richards purports to raise seven different arguments, there is a substantial degree of overlap among some of them. (Doc. No. 22 at 4-17.) For instance, three of his arguments relate to the ALJ's residual functional capacity determination. (*Id.*) While all of Richards' arguments will be addressed, overlapping issues will not be discussed separately.

7

evaluation process. (*Id.* at 8-12.) The ALJ concluded that Richards' impairments did not meet or medically equal the criteria found under Listing 1.00. (R. at 19.) In determining that Richards' depression was "non-severe," the ALJ considered the criteria applicable under Listing 12.04. (R. at 17-19.)

The Listing of Impairments describes impairments which preclude an individual from engaging in substantial gainful activity without regard to his or her age, education, or past work experience. *Knepp v. Apfel*, 204 F.3d 78, 85 (3d Cir. 2000). In order to qualify as *per se* disabled at the third step of the sequential evaluation process, a claimant must show that his or her impairment (or combination of impairments) either "matches" a Listing or is "equivalent" to a Listing. *Sullivan v. Zebley*, 493 U.S. 521, 530-531, 110 S. Ct. 885, 107 L. Ed. 2d 967 (1990). An impairment "matches" a Listing only if it satisfies *all* of the relevant medical criteria. *Id.* at 530. An impairment is "equivalent" to a Listed Impairment only if it is supported by medical findings equal in severity to *all* of the criteria applicable to the most similar Listing. *Id.* at 531. The burden is on the claimant to present evidence in support of his or her allegation of *per se* disability. *Williams v. Sullivan*, 970 F.2d 1178, 1186 (3d Cir. 1992).

The United States Court of Appeals for the Third Circuit has held that it is impermissible for an administrative law judge to summarily determine that a claimant's impairments do not meet or medically equal a Listing without identifying the specific Listings under consideration. *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119-120 (3d Cir. 2000). Nevertheless, an administrative law judge is not required to "use particular language or adhere to a particular format" in conducting his or her analysis. *Jones*, 364 F.3d at 505. The analysis must simply be detailed and specific enough

8

to provide for meaningful judicial review. *Id.* The ALJ satisfied this standard in the instant case. (R. at 17-19.) In order to impugn the ALJ's analysis, Richards must either identify a Listing that was not (but should have been) considered, or point to evidence ignored by the ALJ that would have warranted a finding of *per se* disability under the Listings that were considered. *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 93 (3d Cir. 2007). Richards does neither in his brief. Instead, he simply states that he is *per se* disabled under Listings 1.00 and 12.00 without identifying the specific subsections applicable to his impairments. (Doc. No. 22 at 8-12.)

The ALJ concluded his step-three analysis by observing that neither Richards nor his counsel had specifically argued that a finding of *per se* disability was warranted. (R. at 19.) Richards takes issue with this observation by claiming that his counsel would have argued that Listings 1.00 and 12.00 were applicable had the ALJ permitted him to make a closing argument. (Doc. No. 22 at 17.) At the hearing, however, the ALJ did not prevent Richards' counsel from making a closing argument. (R. at 586.) Instead, he asked Richards' counsel whether he wanted to orally make a closing argument, or whether he preferred to make his closing argument in writing after the submission of additional documentary evidence. (*Id.*) Richards' counsel chose to delay his closing argument until after the procurement of the additional evidence. (*Id.*) The record contains no indication that a written closing argument was submitted. Even at this stage, Richards fails to clearly articulate a coherent argument concerning the applicability of a Listing. Consequently, the Court has no reason to disturb the ALJ's finding that Richards was not *per se* disabled at the third step of the sequential evaluation process.

The record indicates that Richards was educated in conformity with an individualized

9

education program ("IEP")[7] developed pursuant to the Individuals with Disabilities Education Act ("IDEA") [20 U.S.C. § 1400 *et seq.*]. (R. at 164.) Richards testified at the hearing that it was difficult for him to read. (R. at 557.) He now argues that the ALJ erred in determining that his reading difficulty constituted a "non-severe" impairment. (Doc. No. 22 at 13-14.) The documentary record, however, indicates that the ALJ found this impairment to be "severe." (R. at 16.) Because Richards' reading difficulty was attributable to a medically determinable learning disability rather than simply to a deficient education, it constituted an "impairment" within the meaning of the Act and the Commissioner's regulations. *Wolfe v. Chater*, 86 F.3d 1072, 1078 (11th Cir. 1996). Despite the contrary representation made by Richards in his brief, the ALJ properly classified this impairment as a "severe" impairment.[8] (R. at 16.) That issue need not be addressed further.

---

[7] 20 U.S.C. § 1412(a)(4).

[8] Richards apparently confuses the ALJ's vocational and residual functional capacity analyses. In determining that Richards had a "limited education," and that he was not illiterate, the ALJ stated as follows:
> The claimant's ex-wife testified the claimant can pick out some words but cannot read and is a terrible speller. The school records and testing indicate the claimant had difficulty reading but he was able to read at a grade school level (Exhibits 6E, 9E and 13E). In addition, the claimant reported on his application for disability he could read and understand English and could write more than his name in English. Furthermore, the employee of the Social Security Administration who personally met with and assisted the claimant to file his applications reported the claimant received assistance from his ex-wife providing information but did not have any problems reading (Exhibit 2E). Also, the claimant reported in May 2006 he did not require any help taking medication and cooked, drove, wrote down appointments, and made models (Exhibit 4E). Accordingly, this evidence indicates the claimant is able to read. However, even if the Administrative Law Judge determined the claimant was not literate, he would still not be disabled under the Vocational Rules.

(R. at 27.) Richards argues that the lay observations of the SSA employee cannot constitute "substantial evidence" that his reading problem was a "non-severe" impairment. (Doc. No. 22 at 16.) This argument makes no sense. The ALJ partially relied on the SSA employee's observations to determine that Richards had a "limited education." (R. at 26-27.) A claimant's level of education is treated as a factor separate and distinct from his or her medically determinable impairments and resulting functional limitations. 20 C.F.R. §§ 404.1564, 416.964. Richards correctly points out that a lay employee of the SSA cannot be regarded as an "acceptable medical source" under the Commissioner's regulations. 20 C.F.R. §§ 404.1513(a), 416.913(a). In this case, however, that is inconsequential. The ALJ did not base a *medical*

10

Richards contends that the ALJ erred in determining that his depression was a "non-severe" impairment. (Doc. No. 22 at 13-14.) Dr. Fidelis Ejianreh's treatment notes indicate that Richards suffered from depression during the period of time at issue. (R. at 478-479, 505, 509-510, 512, 514, 519.) Nevertheless, those notes do not identify resulting functional limitations. (*Id.*) Dr. Edward Zucherman, a nonexamining medical consultant, opined on August 31, 2006, that Richards had no "marked" or "extreme" mental limitations and very few "mild" or "moderate" mental limitations. (R. at 488-503.) The ALJ relied on this evidence in determining that Richards' depression was not "severe." (R. at 17-19.)

The United States Court of Appeals for the Third Circuit has referred to the second step of the sequential evaluation process as "a *de minimis* screening device" designed to quickly "dispose of groundless claims." *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 546 (3d Cir. 2003). Because the second step is rarely utilized as a basis for the denial of benefits, "its invocation is certain to raise a judicial eyebrow" when it is employed for *that* purpose. *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 361 (3d Cir. 2004). In this case, the second step was *not* used to deny Richards' applications, since the ALJ found other impairments to be "severe." (R. at 16-19.) Under the Commissioner's regulations, a residual functional capacity assessment must account for *all* of a claimant's limitations, including those resulting from "non-severe" impairments. 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2). Where at least one impairment is found to be "severe" and all limitations (including those resulting from "non-severe" impairments) are reflected in the ultimate residual functional

---

finding on the observations of a lay SSA employee. Instead, he simply referenced those observations to support his assessment of Richards' *educational* background. (R. at 26-27.)

11

capacity determination, any error committed at the second step of the sequential evaluation process can fairly be characterized as harmless. *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007); *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987). Although the ALJ found Richards' depression to be "non-severe," he still determined that Richards was "limited to simple, routine tasks involving only simple, work-related decisions." (R. at 20.) The presence of this nonexertional limitation indicates that the ALJ properly accounted for Richards' mental impairments.

Richards' argument concerning the ALJ's treatment of his depression is meritless for two independent reasons. First of all, Richards has not presented evidence of functional limitations resulting from his depression. The claimant bears the burden of proving the severity of his or her impairments at the second step of the sequential evaluation process. *Bowen v. Yuckert*, 482 U.S. 137, 146, n.5, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987); *Sykes v. Apfel*, 228 F.3d 259, 263 (3d Cir. 2000). An administrative law judge's finding at the second step is subject to the same deferential standard of review that applies to all other factual findings. *McCrea*, 370 F.3d at 360-361. Since Richards points to no evidence indicating that his depression resulted in specific functional limitations, the ALJ's finding that this impairment was "non-severe" is "supported by substantial evidence." Second, even if Richards could impugn the ALJ's "non-severity" finding, the alleged "error" by the ALJ was harmless in any event. Because the existence of other "severe" impairments had been established, the sequential evaluation process did not end at the second step. *Maziarz*, 837 F.2d at 244. Moreover, the ALJ's residual functional capacity finding properly accounted for *all* of Richards' impairments (including his mental impairments). *Lewis*, 498 F.3d at 911. Under these

circumstances, the ALJ's finding concerning Richards' depression provides no basis for disturbing the administrative decision presently at issue.

The remaining arguments raised by Richards all concern the ALJ's residual functional capacity determination. (Doc. No. 22 at 12-16.) Richards takes issue with the ALJ's determination that he was capable of engaging in light work activities. (*Id.* at 12-13.) He questions the weight accorded by the ALJ to reports submitted by several different physicians. (*Id.* at 14-16.)

Richards suffered a work-related injury to his lower back on July 17, 2003, while handling cases of three-liter bottles of soda. (R. at 228.) His employer, C&S Wholesale Grocers, Inc. ("C&S"), was ultimately forced to compensate him in the amount of $86,500.00 in accordance with Pennsylvania's Workers' Compensation Act [77 PA. STAT. § 1 *et seq.*]. (R. at 71-75, 552.) Dr. Charles J. Harvey examined Richards on December 2, 2003. (R. at 234.) In his examination report, Dr. Harvey stated that Richards had not fully recovered from his injury of July 17, 2003. (R. at 236.) Nevertheless, he indicated that Richards was capable of performing light work on a part-time basis. (R. at 237.) Dr. Harvey further stated that he expected Richards "to be released to full duties in late January or February of 2004." (R. at 236.)

On May 17, 2005, Dr. John A. Kline performed a consultative medical examination of Richards in connection with his claim for workers' compensation benefits. (R. at 369.) Dr. Kline, a psychiatrist, opined that while Richards had not fully recovered from his injury, he had demonstrated "an overt degree of symptom exaggeration." (R. at 376-377.) According to Dr. Kline, Richards was precluded from returning to his previous position because it had involved heavy lifting. (R. at 377.) Nevertheless, Dr. Kline stated that Richards was capable of performing a range of light

13

work that did not involve "repetitive bending or twisting at the lumbosacral spine." (*Id.*) Dr. Kline completed a "physical capacities checklist" in which he indicated that Richards' physical limitations were consistent with those of an individual who was capable of performing a limited range of light work. (R. at 379-380.)

Dr. William C. Welch, Richards' treating neurosurgeon, reported on June 1, 2005, that Richards had reached "maximum medical improvement" from back surgery that had been conducted on August 3, 2004. (R. at 340.) Dr. Welch observed that Richards was capable of working at the light level of exertion. (*Id.*) In determining that Richards was capable of engaging in light work activities, the ALJ specifically relied on the examination reports which had been supplied by Dr. Harvey, Dr. Kline and Dr. Welch. (R. at 23.)

Richards relies on evidence of his medically determinable impairments in an attempt to refute the ALJ's residual functional capacity determination. (Doc. No. 22 at 14-15.) The problem with Richards' argument is that it fails to appreciate the distinction between the existence of a "medical condition" and the existence of a "statutory disability." *Kuzmin v. Schweiker*, 714 F.2d 1233, 1237 (3d Cir. 1983). The mere fact that Richards can establish the existence of his impairments does not mean that such impairments are sufficiently limiting to render him "disabled" within the meaning of the Act.

Dr. Kline unambiguously found Richards to be capable of performing light work on a full-time basis. (R. at 379-380.) Dr. Welch found Richards to be capable of performing light work, and he made no qualifying statement indicating that Richards could work only on a part-time basis. (R. at 340.) Although Dr. Harvey opined that Richards could engage in light work on only a part-time

14

basis, he expressed the view that Richards could return to "full duties" by January or February of 2004. (R. at 236-237.) At the fifth step of the sequential evaluation process, a finding of "non-disability" is proper only where the claimant is capable of performing the duties of a full-time job. *Bladow v. Apfel*, 205 F.3d 356, 359 (8th Cir. 2000). Nonetheless, a finding of "disability" is warranted only where both the claimant's *medically determinable impairment* (or combination of impairments) and his or her *inability to work* have lasted (or are expected to last) for the requisite twelve-month period. *Barnhart v. Walton*, 535 U.S. 212, 214-222 (2002). Richards was injured on July 17, 2003, which was only six to seven months prior to the point at which Dr. Harvey believed him to be capable of working on a full-time basis. Therefore, the opinions expressed by Dr. Kline, Dr. Welch, and Dr. Harvey were all consistent with the ALJ's finding that Richards was not "disabled" within the meaning of the Act. (R. at 26.) Moreover, as the ALJ pointed out in his opinion, the record contains no evidence indicating that a treating or examining physician has found Richards to be limited to a greater degree than that reflected in the ALJ's residual functional capacity finding. (*Id.*) In light of this reality, it is difficult to fathom how Richards believes that he can successfully challenge the ALJ's decision.

At the hearing, Schollaert testified that employers in the national economy would generally permit an employee to be "off task" for approximately ten percent of a scheduled workday, or roughly six minutes out of every hour. (R. at 583.) Richards argues that he would not be able to satisfy the expectation that he work for roughly ninety percent of a scheduled workday. (Doc. No. 22 at 13.) Nevertheless, he points to no evidence which supports this contention. (*Id.*) The ALJ's residual functional capacity determination (and corresponding hypothetical question to Schollaert) accounted for all of Richards' *credibly established* limitations. *Rutherford v. Barnhart*, 399 F.3d

546, 554 (3d Cir. 2005) (holding that hypotheticals must "accurately portray the claimant's impairments," but need not include impairments not medically established). Consequently, Schollaert's testimony satisfied the Commissioner's burden of establishing, at the fifth step of the sequential evaluation process, that jobs consistent with Richards' residual functional capacity existed in the national economy. *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 205-206 (3d Cir. 2008) (finding proper hypothetical question posed by ALJ that omitted impairment that was not supported by the record).

## V. CONCLUSION

The ALJ's factual findings are consistent with the medical evidence contained in the record. Richards points to no evidence which calls the ALJ's reasoning into question. Accordingly, Richards' motion for summary judgment will be denied, the Commissioner's motion for summary judgment will be granted, and the administrative decision of the Commissioner will be affirmed. An appropriate order follows.

AND NOW, this 28th day of June 2010, this matter coming before the Court on the Motion for Summary Judgment filed by the Plaintiff and the Motion for Summary Judgment filed by the Defendant, **IT IS HEREBY ORDERED** that the Plaintiff's Motion for Summary Judgment (Doc. No. 21) is **DENIED**, and that the Defendant's Motion for Summary Judgment (Doc. No. 23) is **GRANTED**. In accordance with the fourth sentence of 42 U.S.C. § 405(g), the administrative decision of the Commissioner of Social Security is hereby **AFFIRMED**.

**BY THE COURT:**

*/s/ Kim R. Gibson*

**KIM R. GIBSON,
UNITED STATES DISTRICT JUDGE**

cc: All counsel of record